UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                 )
ATRION NETWORKING CORP.,         )
                                 )
          Plaintiff,             )
                                 )
     v.                          )    C.A. No. 14-032 S
                                 )
MARBLE PLAY, LLC,                )
                                 )
          Defendant.             )
_____)
```

**OPINION AND ORDER**

WILLIAM E. SMITH, Chief Judge.

I.  Introduction

Atrion Networking Corp. ("Atrion"), a Rhode Island information technology services firm, has brought claims for breach of contract, fraud and misrepresentation, and unjust enrichment against Marble Play, LLC ("Marble Play"), stemming from Atrion's design of a website for Marble Play. Marble Play has filed the instant Motion to Dismiss (ECF No. 3), contending that: (1) the amount in controversy is insufficient to establish federal subject matter jurisdiction; (2) the Complaint fails to state a claim because the fraud allegations are not pled with particularity; and (3) the Court should dismiss this action in favor of a lawsuit initiated by Marble Play in the Southern District of New York (the "New York Suit"). In the

1

alternative, Marble Play asks that this matter be stayed pending the outcome of the New York Suit.

For the reasons that follow, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The claims for breach of contract and unjust enrichment may proceed; the claim for fraud and misrepresentation is DISMISSED WITHOUT PREJUDICE; and the Court declines to dismiss or stay this matter in favor of the New York Suit.

II. Factual Background[1]

In 2007, Shazamm, a Providence-based website design firm, began negotiating with Marble Play for the design of Marble Play's website. (Compl. ¶ 6.) Shortly thereafter, Atrion hired the Shazamm employees responsible for the project, with the understanding that those employees would continue to perform work for Marble Play. (Id.) Pursuant to a statement of work (the "SOW"), Marble Play agreed to pay an initial fee of $42,000, then make additional monthly payments as work on the website progressed. (Id. at ¶ 7.) In total, Atrion billed Marble Play for $140,000 worth of services, and Marble Play paid some $131,000. (Id. at ¶ 10.)

When Atrion completed its work in 2009, Marble Play refused to pay the remaining balance of approximately $9,000, claiming

---

[1] The facts are summarized from the Complaint (ECF No. 1) and are presumed to be true for purposes of this motion.

that it was unsatisfied with the quality of the website. (Id. at ¶¶ 11-12.) Throughout 2011, Atrion undertook to remedy the deficiencies that Marble Play had identified. (Id. at ¶ 15.) During this time, Atrion alleges, Marble Play demanded functionality and features that went far beyond the scope of the SOW. (Id. at ¶ 16.) For example, Marble Play asked for a Facebook-like social networking feature that would have required extensive resources to create. (Id. at ¶ 17.)

Principals at both companies met in an attempt to resolve the dispute. In these negotiations, Atrion's CEO, Tim Hebert ("Hebert"), quoted the social networking design costs at $215,000. (Id. at ¶ 20.) Philip Lajaunie ("Lajaunie"), Marble Play's CEO, rejected this quote, and complained about perceived failings in Atrion's work. (Id. at ¶¶ 20-21.) Atrion alleges that Lajaunie lodged these complaints in order to extract a lower price for the social networking functions. (Id. at ¶ 21.) The parties ultimately agreed that Atrion would design the website with the social media functions for $60,000. (Id. at ¶ 23.) Marble Play refused to sign a written contract, but represented to Atrion that it was holding the $60,000 in escrow. (Id. at ¶ 24.) Atrion alleges that, despite these representations, Marble Play never intended to pay for the additional work. (Id. at ¶ 25.)

During the period that Atrion was designing the new website, between approximately May 2012 and September 2013, the parties' relationship became increasingly antagonistic. The Complaint suggests that Marble Play's demands were excessive and often mercurial, and that Lajaunie was abusive toward Atrion employees. (Id. at ¶¶ 27-32.)

In September 2013, Atrion delivered the final product to Marble Play. (Id. at ¶ 33.) It represented some 9,100 man hours which, if billed at standard rates, would have been valued at over $1,000,000. (Id. at ¶ 34.) Even then, Marble Play refused to pay. Marble Play offered various explanations for its tight fistedness, including that the website had bugs and that certain features were missing. (Id. at ¶ 35.) Atrion dismisses these explanations as pretext and claims boldly that Marble Play never had any intention of paying for the redesigned website and acted in bad faith in inducing Atrion to perform the additional work. (Id. at ¶¶ 37-38.) As a result, Atrion alleges, Marble Play received some $500,000 in unjust enrichment. (Id. at ¶ 39.)

This suit was filed on January 16, 2014. A day later, Marble Play and Global Sports Links, LLC ("Global Sports Links") filed the New York Suit in federal district court in New York,

naming as defendants Atrion, Shazamm, Hebert and Dana DiPaolo.[2] In the New York Suit, Marble Play seeks damages and injunctive relief based on Atrion's allegedly deficient website design services. The District Judge in the Southern District of New York granted a request for indefinite adjournment of deadlines in the New York Suit based on the pending matter in this Court. See S.D.N.Y. C.A. No. 14-361, ECF No. 10.

III. Discussion

    A.   Amount in Controversy

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different states." 28 U.S.C. § 1332(a). "The rule governing dismissal for want of jurisdiction . . . is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). "This rule strikes a compromise between the requirement that federal courts not exceed the limited grant of jurisdiction . . . and the public policy imperative that courts not engage in

---

[2] It is not immediately clear, but it appears that Global Sports Links is an affiliate of Marble Play and that Dana DiPaolo is an employee of Atrion.

5

an overly-detailed inquiry regarding preliminary questions of jurisdiction that could amount to a mini trial on the merits." Chapman v. Anthem Health Plans of N.H., Inc., Civil No. 03-CV-480-PB, 2005 U.S. Dist. LEXIS 6290, at *2-3 (D.N.H. April 8, 2005). The amount in controversy should be decided from the face of the complaint. Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 6 (1st Cir. 1995).

Atrion's allegations stem from Marble Play's alleged breach of the parties' oral agreement pursuant to which Atrion agreed to redesign Marble Play's website to include social networking functions for $60,000. (Compl. ¶¶ 23-25.) Atrion suggests that this fee was a "steep discount" from Atrion's standard rates, but makes no claim that the contract at issue was for a figure greater than $60,000. (See id. at ¶ 23.)

Of course, breach of a $60,000 contract, alone, is insufficient to trigger federal subject matter jurisdiction. Nevertheless, Atrion is entitled to plead in the alternative. See Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); see also Hasbro, Inc. v. Mikohn Gaming Corp., 491 F. Supp. 2d 256, 264 (D.R.I. 2007) ("It is of course true that parties are allowed to pursue alternative, even inconsistent, claims . . . ."). If Atrion's Complaint is to remain in federal

6

court, it must have a legitimate claim to damages in excess of $75,000.

Atrion has not pled its breach of contract claim in a vacuum. That claim is pled in concert with a fraud and misrepresentation claim, and in the alternative with an unjust enrichment claim.[3] While the Court finds, for reasons that will be discussed in greater detail below, that Atrion has not pled its fraud and misrepresentation claims with sufficient particularity, that has no bearing on the validity of Atrion's unjust enrichment claim which, independently, is sufficient in dollar amount to confer federal subject matter jurisdiction.

Where, as here, "the plaintiff seeks equitable monetary relief, such as disgorgement or restitution, 'it is well established that the amount in controversy is measured by the value of the object of the litigation' – that is, the amount of equitable monetary relief sought." Ervin v. Sprint Commc'ns

---

[3] Though not immediately relevant, Atrion would also be entitled to aggregate certain of its claims for jurisdictional amount purposes. See Roth v. Bierman, Case No. l:10-CV-239, 2010 U.S. Dist. LEXIS 62443, at *11-12 (N.D. Ohio June 23, 2010) ("A plaintiff can aggregate damages from separate claims against a defendant to meet the amount in controversy requirement."). Nevertheless, "when a [p]laintiff asserts two alternate theories of recovery arising from the same transaction, the court cannot aggregate the damages arising from the alternate claims." Id. at 12. Here, Atrion would be entitled to aggregate its breach of contract and fraud claims, but not its breach of contract and unjust enrichment claims, as those are pled in the alternative. Of course, aggregation is not necessary in this case because the unjust enrichment claim is independently sufficient to meet the amount in controversy requirement.

Co., 364 F. App'x 114, 117 (5th Cir. 2010) (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)). Absent bad faith on the part of the plaintiff seeking such relief, or meaningful evidence or legal argument suggesting that the amount in controversy is in fact less, the amount sought by the plaintiff controls for purposes of assessing federal subject matter jurisdiction. See id.

Marble Play relies principally on the notion that "[i]n an unjust enrichment case, the inquiry focuses on the benefit realized and retained by the defendant as a result of the improvements provided." Aladdin Elec. Assocs. v. Town of Old Orchard Beach, 645 A.2d 1142, 1145 (Me. 1994). Marble Play contends that the website that Atrion designed was so defective that its value to Marble Play was negligible, and certainly below $75,000. But, the reliance on Aladdin Electric is misplaced. There, the Supreme Judicial Court of Maine was called upon to parse state law with respect to the sufficiency of damages awarded by a trial court to a contractor who had not been compensated after performing work for a local municipality. Atrion's ability to recover on an unjust enrichment theory may ultimately depend on a fact finder's assessment of the value of the website to Marble Play. But the type of post-verdict computation of damages at issue in Aladdin Electric is

8

irrelevant to a determination of the amount in controversy for purposes of federal subject matter jurisdiction.[4]

Atrion has alleged that Marble Play was unjustly enriched by at least $500,000 as a result of Atrion's website design work and Marble Play's subsequent refusal to pay for it. (Compl. ¶ 39.) Assessing the amount in controversy from the face of the Complaint, as the Court must, see Coventry Sewage, 71 F.3d at 6, and absent any suggestion that the $500,000 figure was not made in good faith, see St. Paul Mercury Indem. Co., 303 U.S. at 288-89, the Court concludes that Atrion has pled facts sufficient to confer federal subject matter jurisdiction.

---

[4] After oral argument, Marble Play sought leave to file supplemental authority supporting its position with respect to the calculation of unjust enrichment damages (ECF No. 9). The Court has granted this motion in a separate text order, but finds the authority unpersuasive. As an initial matter, the cited Connecticut Supreme Court case, Hartford Whalers Hockey Club v. The Uniroyal Goodrich Tire Co., 649 A.2d 519 (Conn. 1994), falls victim to the same flaw as Aladdin Electric, as the post-verdict sufficiency of an unjust enrichment award under state law is irrelevant to the sufficiency of a plaintiff's unjust enrichment claim for purposes of federal subject matter jurisdiction. What is more, the cited provisions from the Restatement (Third) of Restitution and Unjust Enrichment, instructing reliance on the contract price in determining an entitlement to unjust enrichment proceeds, prematurely presumes that Marble Play as an "innocent recipient." See Restatement (Third) of Restitution and Unjust Enrichment: Innocent Recipient § 50 (2011). Given the nature of Atrion's allegations, the Court declines to presume at this early stage that Marble Play is an innocent recipient. See id. at §§ 50, 51 (discussing cost to the claimant as the focus for unjust enrichment damages where the defendant's wrongful acts caused the unjust enrichment).

B.  The Particularity of the Fraud Claims

Marble Play moves to dismiss Atrion's fraud and misrepresentation claims on grounds that the claims are not pled with sufficient particularity and are pled only "on information and belief."  "[T]o survive a motion to dismiss under Rule 12(b)(6), a plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  The complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (citations omitted) (internal quotation marks omitted).

Heightened pleading requirements apply to fraud-based claims.  "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  "What constitutes sufficient particularity necessarily depends upon the nature of the case and should always be determined in the light of the purpose of the rule to give fair notice to the adverse party and to enable him to prepare his responsive pleading."  Women's Dev. Corp. v. City of Central Falls, 764 A.2d 151, 161 (R.I. 2001) (quoting 1 Kent, R.I. Civ. Prac. § 9.2 at 92 (1969)); see also Haft v.

10

Eastland Fin. Corp., 755 F. Supp. 1123, 1126-27 (D.R.I. 1991). A plaintiff may not circumvent the requirements of Rule 9 by veiling its breach of contract allegations as more nefarious but unsubstantiated fraud, misrepresentation, and fraudulent inducement claims. See, e.g., All-Tech Telecom, Inc. v. Amway Corp., 174 F.3d 862, 865 (7th Cir. 1999); Carlucci v. Owens-Corning Fiberglass Corp., 646 F. Supp. 1486, 1490-91 (E.D.N.Y. 1986) ("The allegations contained in the complaint are pled almost entirely upon 'information and belief' and are nothing but conclusory . . . a claim predicated upon a breach of a contractual arrangement cannot be converted into a fraud claim simply by allegations that a defendant never intended to adhere to its obligations under the agreement.").

A review of the Complaint reveals a dearth of particularized allegations relating to fraud, misrepresentation, or fraudulent inducement. Indeed, the allegations are of precisely the sort that the Carlucci court cautioned against in that they are stated in vague, unsubstantiated terms and are generally premised "on information and belief."[5]

---

[5] See, e.g.: "Although it did not know it at the time, it is now clear to Atrion that Marble Play did not intend ever to compensate Atrion for the additional work . . . ." (Compl. ¶ 25.) "On information and belief, Marble Play never had any intention of paying Atrion for the redesign of its website to include social networking functionality." (Id. at ¶ 36.) "On information and belief, Marble Play acted in bad faith by making false and misleading statements in order to induce Atrion to

11

As Atrion correctly suggested at oral argument, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." See Fed. R. Civ. P. 9(b). But, as the Carlucci court recognized, it is insufficient to merely attempt to convert a claim for breach of contract to one for fraud by founding it upon nothing more than information and belief that the defendant never intended to perform.

Because Atrion has not alleged its fraud and misrepresentation claim with sufficient particularity, this claim must be dismissed. Nevertheless, the claim is DISMISSED WITHOUT PREJUDICE; Atrion may file an Amended Complaint setting forth its claims with greater particularity, or may proceed with discovery on its remaining claims and make a determination as to whether the fraud claims are sufficiently supported to bring them at a later time.

C. Dismissing or Staying the Case; the New York Suit

Atrion filed this suit on January 16, 2014. A day later, Marble Play filed the New York Suit in federal district court in Manhattan. Now, Marble Play asks the Court to dismiss this suit in favor of the New York Suit or, alternatively, to stay the case pending the outcome of the New York Suit. The Court declines to do either for the reasons that follow.

---

perform web development services for Marble Play for which Marble Play never intended to pay." (Id. at ¶ 37.)

12

Where "two suits involve the same issues and truly create duplicate litigation, the first-filed is generally preferred." Nortek, Inc. v. Molnar, 36 F. Supp. 2d 63, 69 (D.R.I. 1999). But, there are exceptions. Special circumstances sufficient to overcome the first-filed rule have been found to exist "where a party has won the race to the courthouse by misleading his opponent into staying his hand in anticipation of negotiation; or by reacting to notice of imminent filing by literally sprinting to the courthouse the same day." Veryfine Prods., Inc. v. Phlo Corp., 124 F. Supp. 2d 16, 22 (D. Mass. 2000).

In assessing whether special circumstances are present, courts look to the content of correspondence between the parties and the length of time between notice of impending litigation and the filing of a lawsuit. See Feinstein v. Brown, 304 F. Supp. 2d 279, 283 (D.R.I. 2004); The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 16 (D. Mass. 2002). Two sets of correspondence are relevant to this inquiry. The first is a set of two letters exchanged between the parties' attorneys. The first letter was sent from Marble Play's attorney to Atrion's attorney on November 14, 2013. Therein, Marble Play suggests that the website was defective, demands payment from Atrion of $3 million and states that "[s]hould we proceed further to litigation and prevail, Marble Play would be able to recover that as well as punitive damages."

13

(See Ex. 4 to Def.'s Mot. to Dismiss, ECF No. 3-1.) A response to this letter was sent from Atrion's attorney to Marble Play's attorney on December 16, 2013, indicating that Atrion was investigating the issues and expected to be able to respond the following week. (See id. at Ex. 5.)

The second set of correspondence is a series of emails between the same two attorneys. (See id. at Ex. 6.) In these emails, very little of substance is discussed and the attorneys are generally trying to find a mutually convenient time to discuss the case. The most important of these emails is one that Atrion's counsel sent early in the morning on January 16, 2014 asking if Marble Play's counsel was available for a call the next day to discuss the matter. Before Marble Play's attorney could respond to the email, Atrion's counsel filed the action in this Court.

Marble Play's entreaty that the Court set aside the first-filed rule is problematic for two reasons. As an initial matter, the correspondence at issue does not suggest that Atrion misled Marble Play into believing that settlement discussions were ongoing (or even likely to begin). The email correspondence appears to be nothing more than two busy lawyers attempting to find time to schedule a telephone call. And the letter that Atrion's attorney sent to Marble Play's attorney

promises that Atrion would investigate the issues related to the lawsuit and respond at a later time.

On this point, Marble Play relies principally on Nortek. There, a judge of this Court set aside the first-filed rule after he found that the party that had filed first had misled opposing counsel by asking that opposing counsel send him certain materials and promising to discuss a resolution once he received the materials in order to delay opposing counsel from filing his own suit. Nortek, 36 F. Supp. 2d at 70. The underlying correspondence in this case is of an entirely different ilk and cannot fairly be read as an attempt by Atrion to mislead Marble Play into staying its hand.

Second, a full two months passed between Atrion's receipt of the November 14 letter and the filing of its lawsuit. This substantial delay means that it cannot be said that Atrion "literally sprint[ed] to the courthouse the same day." Veryfine Prods., 124 F. Supp. 2d at 22.

Marble Play's final pitch asks the Court to dismiss or stay the matter in favor of the New York Suit in order to avoid wasting judicial resources or producing inconsistent results. See Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987). This argument is not compelling. As noted previously, the New York Suit has been indefinitely adjourned pending the outcome of the Motion to Dismiss in this case.

15

Thus, it cannot be said that both cases are proceeding such that judicial resources are being wasted; nor is there the potential for inconsistent results.[6]

IV. Conclusion

For the reasons discussed, Marble Play's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Atrion's fraud and misrepresentation claim is DISMISSED WITHOUT PREJUDICE and Atrion may file an Amended Complaint curing the deficiencies identified herein, or it may proceed with discovery on the remaining counts and defer on the fraud claim until a later time. The Motion to Dismiss is DENIED with respect to Atrion's claims for breach of contract and unjust enrichment, and DENIED with respect to the request to dismiss or stay the case in favor of the New York Suit.

IT IS SO ORDERED.

/s/ WESmith
William E. Smith
Chief Judge
Date: May 8, 2014

---

[6] Marble Play suggests that because Shazamm and Global Sports Links are parties to the New York Suit, but not this one, the Court should dismiss or stay the case because those parties are indispensable to the resolution of the dispute. It is unclear, however, whether those parties have any stake in this litigation or are in any way relevant to the contractual relationship between Atrion and Marble Play. As such, the Court declines to dismiss or stay the case on these grounds.